**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **DOCKET NO. 2:23-cr-00190** |
| | * | |
| | * | |
| **VS** | * | **SECTION: "H"** |
| | * | |
| | * | |
| **EMUOBOSAN HALL** | | |

**SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE**
**ON BEHALF OF DEFENDANT HALL**

## I. INTRODUCTION AND SENTENCING REQUEST

Defendant, Emuobosan Hall ("Ms. Hall") through undersigned counsel, respectfully submits the following Sentencing Memorandum requesting that this Honorable Court consider the 18 U.S.C. § 3553(a) factors in determining the sentence to be imposed. Ms. Hall asks that this Court structure a sentence that reflects her limited role as a low-level intermediary in a fraud scheme orchestrated by others and that accounts for her lack of involvement in planning, execution, or contacting of victims of the offense. Specifically, Ms. Hall respectfully requests this Court to issue a non-custodial sentence or, if not, a custodial sentence of not more than twenty-four months.

## II. CONTEXT OF MS. HALL'S ACTIONS

Kenneth Akpieyi and other "unknown perpetrators" conducted a "Romance Scam" in which they would contact older widows to form romantic relationships and ultimately request money. The scam was largely successful, amassing over $9.5 million dollars. Ms. Hall had nothing to do with the targeting or contacting of victims. Instead, Ms. Hall allowed fraudulently obtained money to be deposited into bank accounts in her name and her daughter's name, and then

transferred those funds as directed by Akpieyi and other 'unknown perpetrators." At most, she made approximately $45,000 as her profit from this scheme. Ms. Hall made serious errors in judgment when she allowed herself to be used as a financial intermediary for Akpieyi and other "unknown perpetrators" in the underlying fraud scheme. By pleading guilty, Ms. Hall acknowledged that those errors constituted federal crimes. This Court, in crafting a sentence for Ms. Hall that is appropriate in light of the evidence and the factors set forth in 18 U.S.C. § 3553(a), should take special notice of the following facts illustrating her minimal role in the underlying offense.

Ms. Hall is not a sophisticated fraudster. She did not create, direct, or design the fraud scheme. She did not contact victims. She did not recruit accomplices beyond her daughter with whom she lived. Ms. Hall was simply a bridge; a low-level middleman who followed the instructions of Akpieyi and/or the other "unknown perpetrators" identified by the government. The extent of Ms. Hall's involvement is this – she deposited and/or allowed to be deposited fraudulently obtained funds into accounts and transferred those funds as directed. That is all.

## III. PROCEDURAL BACKGROUND AND PSR RECOMMENDATIONS

Ms. Hall entered a guilty plea on February 26, 2025. R. Doc. 82. Her guilty plea was predicated on the accompanying factual basis. R. Doc. 83. On March 25, 2025, Ms. Hall moved to withdraw her guilty plea to the extent that there were inaccuracies in the factual basis establishing her guilt. R. Doc. 97. However, Ms. Hall did not intend to deny her guilt; she sought to correct minor details of the stipulated facts to more accurately reflect her involvement in the fraud scheme. She accepted – and continues to accept – responsibility for her conduct.

On December 17, 2025, United States' Probation ("U.S. Probation") recommended certain guideline enhancements in preparation for this Court's sentencing determination. R. Doc. 167. Ms.

Hall has objected to U.S. Probation's recommendations in a separate filing. *See* R. Doc. 178. Namely, Ms. Hall objects to: (1) a 2-level enhancement for using 'sophisticated means' in the commission of the fraud; (2) an 2-level enhancement for targeting vulnerable victims; (3) a 2-level enhancement for being an 'organizer, leader, manager, or supervisor'; and (4) the denial of a 3-level reduction for acceptance of responsibility. As detailed in Ms. Hall's objections, these enhancements do not accurately reflect Ms. Hall's actual role in this offense and result in a sentencing guideline calculation that grossly overstates Ms. Hall's culpability in the broader fraud scheme.

## IV. 18 U.S.C. § 3553 SENTENCING FACTORS

The sentencing factors of 18 U.S.C.§ 3553(a), as applied to the facts and circumstances of Ms. Hall's case and background, merit a strong consideration of leniency in sentencing.

### a. The Law: 18 U.S.C. § 3553

Courts must still consider the sentencing guidelines, but under *United States v. Booker* the Guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006), cert. denied, 127 S.Ct. 131 (2006)(citing *United States v. Booker*, 125 S.Ct. at 756-757); *see also Nelson v. United States*, 555 U.S. 350, 351, 129 S.Ct 890 (2009) ("the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors…"). The guidelines do not have "quasi-mandatory status." *United States v. Reinhart*, 442 F.3d at 864. The federal sentencing statute requires a "sentence sufficient, but not greater than necessary" to meet certain goals, including consideration of "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed– (A) to reflect

the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (3)-(7).

To comply with the Fifth Circuit's instructions in *United States v. Mares*, the Court, if it elects to impose a non-guideline sentence,

> should carefully articulate the reasons [the court] concludes that the sentence [it] has selected is appropriate for that defendant. These reasons should be fact specific and include, for example, aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history, relevant conduct or other facts specific to the case at hand which led the court to conclude that the sentence imposed was fair and reasonable.

See *United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), cert. denied, 126 S.Ct.43 (2005).

As such, in every case, a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines.

Moreover, Congress has emphasized that, in considering these factors, sentencing courts are obligated to bear in mind that lengthy imprisonment may not be the best way to achieve the statutory goals of sentencing: The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. 18

U.S.C. § 3582(a). Thus, courts are required by statute to impose a reasonable sentence, considering all of the factors of 18 U.S.C. § 3553(a)

### b. Applying the Factors of 18 U.S.C. § 3553(a) to Ms. Hall and her Case

The Court must consider the following factors when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing. They are:

#### i. The History and Characteristics of Ms. Hall

Ms. Hall has no prior criminal history. She is a mother who was struggling economically and made the wrong decision to allow herself to be used in a fraud scheme for relatively modest compensation ($45,000). U.S. Probation's characterization of Ms. Hall's living arrangement as 'luxurious' is misleading. While Ms. Hall's current apartment complex is nice, U.S. Probation did not effectively paint the complete picture of how Ms. Hall ended up there. Ms. Hall was evicted from a previous apartment and was forced to find a new living situation. She wanted to find a new home in the same general area to ensure that her child could remain in the same school district. Unfortunately, Ms. Hall could not qualify as a primary tenant in her apartment search because of her poor economic position. Thankfully, Ms. Hall's friend agreed to live with her as the primary tenant in the nicer apartment; this was the only way Ms. Hall could have secured this arrangement. Ms. Hall should not be penalized for seeking to maintain stability for her child's education after an eviction. Ms. Hall's mission was to provide for her child and her child's well-being, not to live a luxurious lifestyle through fraudulent means.

In addition, Ms. Hall has been improving herself via post-high school education. As the attached student profile makes clear, she is actively enrolled at George Mason University, is doing well and is in good standing. *See* Exhibit A.

Finally, as the attached letters in support also make clear, Ms. Hall is not a terrible, unredeemable person. *See* Exhibit B. She clearly executed bad judgment and is paying the price for that decision. But she is not an evil fraudster.

**ii. The Nature and Circumstances of the Offense**

**1. The Offense and Ms. Hall's Role**

As discussed earlier, Akpieyi and other "unknown perpetrators" conducted an extensive scam in which they would contact older widows to form romantic relationships to eventually ask those individuals for money. Ms. Hall allowed fraudulently obtained money to be deposited into bank accounts in her name and her daughter's name, and then transferred those funds as directed by Akpieyi and other 'unknown perpetrators." Ms. Hall's conduct is not excusable. However, the reality is that Ms. Hall did not solicit victims, did not recruit members, and did not organize the fraud. Additionally, Ms. Hall received a relatively minimal portion of the scheme's total; for reference, she received at most $45,000 of the scheme's $9,668,860.00, which is only .46% of the profits.

It is also important to note that Ms. Hall's company, Le Beau Monde, which was the corporate entity used to make those illegal deposits and transfers, was actually a legitimate company that conducted legal business. In fact, Ms. Hall created this company and ran it as a legitimate business at all times and only permitted Akpieyi and the "unknown perpetrators" to utilize as a "side hustle." *See* Exhibit C.

The reality of Ms. Hall's role matters for this Court's determination of an appropriate sentence under § 3553(a). Ms. Hall was not the mastermind. She was not a recruiter. She did not interact with victims. She was an intermediary who did was she was told to make some extra cash, which she needed as an evictee and a mother.

### iii. The Need for the Sentence Imposed

The Court must consider the need for the sentence imposed to: "(a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(a-d).

In short, a sentence that treats Ms. Hall as a 'sophisticated' fraudster who led or organized a fraud scheme to target vulnerable victims would overstate her role in this offense and would be unjust. Ms. Hall recognizes that the instant fraud offense is serious and deserves punishment. Again, she has acknowledged that her and her accomplices' conduct was wrong and has accepted responsibility. However, the sentence to be imposed by this Court should be informed by Ms. Hall's actual conduct and role in the scheme.

Additionally, Ms. Hall has no criminal history. There is no evidence that she has engaged in any pattern of fraud and poses a continued threat to the public. She was used by others in the 'Romance Scam" and received minimal benefit, especially relative to the operation's total amounts. A sentence that accounts for these realities will promote respect for the law and provide just punishment while avoiding the unjust punishment of Ms. Hall, a low-level participant.

### iv. The Need to Avoid Unwarranted Sentence Discrepancies

The guidelines calculated by U.S. Probation run the risk of creating unjustified sentence disparities. Ms. Hall was substantially less involved than Akpieyi and "unknown perpetrators" – who were the true leaders of the scheme – yet the enhancement recommendations by U.S. Probation treat her as if she were equally culpable.

Ms. Hall followed instructions to deposit and transfer funds. If it becomes routine for low-level money accomplices to receive a 'sophisticated means' enhancement when they follow instructions to wire money to different accounts, then the enhancement loses its meaning. Inconsistent application by the courts will inevitably result in disparities between similarly situated defendants in fraud schemes. In the same vein, applying the vulnerable victim enhancement to Ms. Hall – who had no contact with victims and no knowledge of their identities – creates a disparity with her co-defendants *who actually targeted victims*. And finally, labelling Ms. Hall as a 'leader' of a fraud scheme because she directed her daughter (with whom she lives) creates a disparity for other defendants *who actually recruit, manage, and control criminal enterprises*.

There is no question that the enhancements recommended by U.S. Probation, if applied by this Court, would result in Ms. Hall being sentenced as if she played a more significant, overstated role in the fraudulent conduct than the factual reality of the situation. Application of these enhancements would dilute the meaning and power of the enhancements and create unwarranted disparities between defendants like Ms. Hall and those for whom the enhancements are wholly warranted.

**v. The Kinds of Sentences Available**

In *Booker*, the United States Supreme Court severed and excised 18 U.S.C § 3553(b), a provision which required courts to sentence within a particular sentencing guideline range. *Booker*, 125 S. Ct. at 756. Accordingly, the sentencing guideline ranges are advisory, and this Court is free to impose a sentence that appropriately reflects Ms. Hall's limited role and minimal culpability. *Id*.

## V. Conclusion

For the foregoing reasons, Ms. Hall respectfully requests that this Court grant her request for variance and impose a sentence that more accurately reflects her role as a low-level intermediary who was tied up in a broader fraudulent scheme. As a middleman, Ms. Hall followed instructions; she did not contact victims or plan the fraud. For the reasons discussed, Ms. Hall specifically requests that this Court issue a non-custodial sentence or, if not, a custodial sentence of not more than twenty-four months.

Respectfully Submitted,

*/s/ Sean M. Toomey*
Sean M. Toomey (La. Bar #36055)
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
Telephone: (504) 581-7979
stoomey@liskow.com

*Attorney for Emuobosan Hall*

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing pleading has been served upon counsel of record for all parties by electronic filing on this 15 day of January 2026.

*/s/ Sean Toomey*
Sean M. Toomey